IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JESSE BILITER, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:13cv00330 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| GEORGE HINKLE, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Plaintiff Jesse Biliter, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights to equal protection and due process were violated. The defendants have filed a motion to dismiss and Biliter has responded, making this matter ripe for disposition. For the reasons stated herein, I will grant defendants' motion to dismiss.

I.

Biliter is a sex offender incarcerated at Keen Mountain Correctional Center ("KMCC"), a security level 4 facility in the Virginia Department of Corrections ("VDOC"). Biliter names VDOC Regional Director George Hinkle, KMCC Assistant Warden R. Clary, and KMCC Program Manager Ms. Taylor as defendants to this action. Biliter alleges that the defendants violated his right to equal protection by "claim[ing] that [he is] not permitted to work in the [KMCC] food service dep[artmen]t because he is a sex offender." Biliter also alleges that VDOC Operating Procedure ("OP") 841.2, which governs Offender Work Programs, is unconstitutional because it violates his rights to equal protection and due process.

In support of his equal protection claim concerning his job assignment, Biliter alleges that "there are inmates who committed murder or burglary . . . and inmates guilty of drug dealing and robbery working in KMCC['s] food service [department]." Biliter argues that, regardless of the

crime they committed, all KMCC inmates are security level 4 and, thus, "the VDOC does not consider [Biliter] any more dangerous than any other security level []4 inmate." Biliter states that KMCC does not deny a sex offender the ability to go to school, and the school is in the same building as, "has female [employees] just like," and has the same level of security as the food service department. In addition, Biliter states that female officers work in the housing areas at KMCC every day. Biliter argues that "if [he is] not a threat to female [employees] who work in the housing areas or to female [employees] who work in the school, then [he is] not a threat to female [employees] in the KMCC food servi[c]e [department]."

Biliter also argues that OP 841.2 is "unconstitutional in part and discriminatory in part." However, Biliter does not allege which part of the OP is unconstitutional or discriminatory. He does, however, appear to take issue with KMCC's "Implementation Memorandum" concerning OP 841.2. Specifically, he cites Section E of the Memorandum, titled "Sensitive Positions." Section E states, in relevant part, "[c]ertain jobs are considered sensitive positions and offenders with certain criminal convictions and/or certain institutional disciplinary infractions may not be assigned to these positions. . . . An offender will not be assigned to a job in a sensitive position if, during the last ten (10) years, he has had a homicide offense, sexual offense, kidnapping, abduction, assault, escape, evade, elude, or a pattern of failure to appeal." KMCC Implementation Manual, Section E(1), (2). This section also provides a list of job positions that are considered sensitive, but acknowledges that the list is not exclusive and is subject to addition and change. *See id.* at Section E(1). Biliter argues that the defendants "don't . . . and cannot . . . explain . . . how a 10 year old sex offense is any different than a 1 year old or 1 month old sex offense." Biliter states that all inmates at KMCC are security level 4, which "means that every

2

Case 7:13-cv-00330-NKM-RSB   Document 20   Filed 07/23/14   Page 2 of 6   Pageid#: 85

inmate at KMCC is considered the same level of risk to the general public, the staff, and other offenders."

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant

3

is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citation omitted). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (*quoting Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (*quoting Sado v. Leland Memorial Hospital*, 933 F. Supp. 490, 493 (D. Md. 1996)).

### III.

To state a claim for relief under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). Section 1983 liability requires personal conduct by a named defendant; however, Biliter has not alleged any facts to describe how defendants Hinkle[1] and

---

[1] To the extent Biliter may be suing Hinkle because of his supervisory position as Regional Administrator for the Western Region of the VDOC, his claim fails because *respondeat superior* generally does not apply in § 1983 suits. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). To the extent Biliter may be suing Hinkle because of his role as a Level II respondent to offender grievances, his claim also fails. "Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation," *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007), and inmates do not have a constitutionally protected right to a grievance procedure, *see, e.g., Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Accordingly, there is no liability under § 1983 for a prison administrator's response to a grievance or appeal.

4

Clary[2] were personally involved in violating his rights.  Therefore, I find that Biliter has failed to state a claim against these defendants and will grant their motion to dismiss.  Accordingly, only defendant Taylor, the KMCC Program Manager, remains.[3]

### IV.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To that end, the Equal Protection Clause affords that "all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1982).  To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination"; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.  *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977) (requiring proof of racially discriminatory intent or purpose to show an equal protection violation); *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  Because of the heightened deference due to administrators in the prison context, a prison administrator's conduct that impinges upon an inmate's constitutional rights is valid as long as it is reasonably related to legitimate penological interests and is not an exaggerated response to a particular concern, even where the constitutional right allegedly infringed would otherwise warrant strict scrutiny review. *Morrison*, 239 F.3d at 654-55.  To succeed on an equal protection claim, a plaintiff must set forth

---

[2] To the extent Biliter may be suing Clary because of his supervisory position as Assistant Warden at KMCC, Biliter's claim fails because *respondeat superior* generally does not apply in § 1983 suits.  *Vinnedge*, 550 F.2d at 928.

[3] Although he does not explicitly allege such, I will liberally construe Biliter's complaint to allege that Taylor, as the KMCC Program Manager, approves (or disapproves) KMCC offender work assignments, including the denial of a job in the food service department to Biliter.

5

"specific, non-conclusory factual allegations that establish improper motive." *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003). Mere conclusory allegations of discrimination are insufficient to state a claim. *Spaulding v. Dixon, et al.*, No. 90-7315, 1990 U.S. App. LEXIS 15560, *2 (4th Cir. Sept. 4, 1990); *Chapman v. Reynolds*, 378 F. Supp. 1137, 1139 (W.D. Va. July 12, 1974).

Biliter does not allege that other inmates with prior sex offenses are assigned to work in the KMCC food service department and, thus, I find that Biliter's allegations do not demonstrate that defendant Taylor treated him differently from other inmates with whom he was similarly situated or that any unequal treatment was the result of intentional or purposeful discrimination. Accordingly, I find that Biliter has not demonstrated a constitutional violation and, therefore, I will grant defendants' motion to dismiss this claim.

**IV.**

Biliter also argues that "part[s]" of OP 841.2 are unconstitutional and discriminatory; however, he does not identify which parts he is challenging. Moreover, Biliter does not allege how any of the named defendants were involved in or responsible for establishing the allegedly unconstitutional OP. Accordingly, I find that Biliter's allegations fail to state a claim against any of the named defendants, *West*, 487 U.S. at 42, and will dismiss this claim.

**V.**

For the reasons stated, the court grants defendants' motion to dismiss.

ENTER: This 21st day of July, 2014.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE